THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LESTER E. VANZANDT, Defendant-Appellant.

Fifth District    No. 5—95—0847

Opinion filed April 30, 1997.

Gene Gross, of Reed, Heller, Mansfield & Gross, of DuQuoin, for appellant.

David Stanton, State's Attorney, of Pinckneyville (Norbert J. Goetten, Stephen E. Norris, and Kendra S. Mitchell, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE RARICK delivered the opinion of the court:

On October 5, 1994, Lester Vanzandt was issued a traffic citation for driving under the influence of alcohol (DUI) in violation of section 11—501(a)(2) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11—501(a)(2) (West Supp. 1993)). A bench trial was held on September 6, 1995. On the day of trial, the State filed an additional charge of driving under the combined influence of alcohol and drugs in violation of section 11—501(a)(4) of the Code (625 ILCS 5/11—501(a)(2) (West Supp. 1993)). Vanzandt's objection to the filing of the new charge was overruled.

At trial, Illinois State Police Sergeant John Hafford testified that at 2:47 a.m. on October 5, 1994, he was traveling south on Route 51 when he observed a vehicle approaching from the other direction at a high rate of speed. His radar indicated that the vehicle was traveling at 86 miles per hour. As the vehicle approached Hafford, it weaved across the center line, forcing him to take evasive action. Hafford then turned and pursued the vehicle. During the pursuit Hafford observed the vehicle weaving erratically. Eventually it turned off onto a side road and pulled over.

Hafford stopped behind the vehicle. He exited his squad car, and as he approached the vehicle, he observed the driver's door open and the driver fall partially out, catching himself with his hand. The vehicle lurched forward and Hafford yelled at the driver to put his foot on the brake. The driver was then able to upright himself in his seat. As Hafford approached the vehicle, he observed a blond female in the passenger's seat.

Hafford asked the driver for his driver's license, at which point the driver exited the vehicle and stated that his driver's license was suspended for driving under the influence. Hafford then advised him that he was under arrest for driving while license suspended, speeding, improper lane usage, and not wearing a seat belt. Hafford also asked the driver his name, and he identified himself as Lester Vanzandt. Hafford testified that he smelled the odor of alcohol emanating from the vehicle and on Vanzandt's breath.

Hafford then returned to his squad car to run a computer check on Vanzandt. While he was running the check, he observed Vanzandt swaying and shifting his feet to steady himself. Eventually Vanzandt simply leaned up against his car. Hafford testified that, based upon this, the odor of alcohol, the erratic driving, and Vanzandt's thick-tongued, slurred speech, Hafford felt that Vanzandt was under the influence of alcohol.

Hafford then requested Vanzandt to take a field sobriety test. Vanzandt refused, stating that his attorney had advised him that he was not required to do so. At this point, Hafford told Vanzandt that he was under arrest for driving under the influence of alcohol, handcuffed him, and placed him in the squad car. Hafford testified that Vanzandt said something to the effect of "Why don't you arrest her, she's drunker than I am."

Hafford talked to the female passenger, but she did not appear to be intoxicated. Hafford advised her of what Vanzandt's bond would be and allowed her to leave. Hafford then took Vanzandt to district headquarters, where he refused to take a breathalyzer test, again stating that his refusal was based upon the advice of his attorney. Vanzandt then asked if he could call his wife because he needed his insulin. Hafford asked Vanzandt if he was a diabetic, and he said yes.

After reading Vanzandt his *Miranda* rights, Hafford proceeded to interview him. This consisted of asking Vanzandt a series of questions from a standardized form. One of the questions was whether he took insulin. Vanzandt stated that he took insulin because he was an insulin-dependent diabetic and that he had last taken insulin around 5 p.m. Hafford also asked Vanzandt if he had been drinking, and he said that he had had one gin and tonic. Shortly thereafter, Van-

zandt's wife arrived at police headquarters and informed Hafford that Vanzandt was a diabetic. Hafford asked Vanzandt if he needed to go to the hospital, but he said no. Hafford testified that while at headquarters, Vanzandt did not appear nervous or "fainty," he did not act ill, he did not complain of feeling ill, and his demeanor never changed. He remained unsteady and his speech remained slurred.

Hafford testified that he had made several hundred DUI arrests in his 18-year career and had many more opportunities to observe persons who were under the influence of either alcohol or drugs. Based on Vanzandt's actions, his erratic driving, and Hafford's observations, Hafford opined that Vanzandt was under the influence of alcohol.

Hafford also testified that his father-in-law was a diabetic and an alcoholic, and because of this personal experience he could tell the difference between someone who had alcohol on his breath and someone whose breath odor was the result of his diabetic condition. When asked if he was familiar with whether alcohol had a greater effect on the physical abilities and symptoms of diabetics, he stated that was "hard to say." He stated that based on his experience with his father-in-law he knew that alcohol affected a person's blood sugar level and could cause severe problems for a diabetic. He further stated that a person who was taking insulin was not supposed to drink because there is sugar in alcohol.

The court asked Hafford several questions regarding alcohol and insulin:

> "THE COURT: Officer, if someone has taken insulin at 5:00 on the previous evening, would you expect this, the effects of this insulin to affect, or the effects of the diabetes after having taken that insulin the day before or taken the shot the day before, does this effect [sic] his ability to drive at 2:00 a.m. in the morning?
>
> [HAFFORD]: Well, the problem you run into is, if you get too much sugar in your system. Now if you are taking insulin, you are not supposed to drink period, no alcohol at all, because there is sugar in alcohol. So, if you are drinking alcohol, in addition to taking insulin, and you are not checking yourself, you can have a reaction to that.
>
> THE COURT: But we don't know how much alcohol it would take to cause him to have a reaction because everyone is different. Is that what you are saying?
>
> [HAFFORD]: Yes, sir. I am not a doctor. Everyone is different. There's a lot of different variables. The size—
>
> THE COURT: One drink in his case maybe the amount that would—
>
> [HAFFORD]: I have seen my father-in-law. *** And if he gets

too much sugar in his system *** it messes him up. He is not allowed to drive. Of course, he has had a stroke. But it definitely will effect [sic] your ability, your coordination, it will effect [sic] your ability to think clearly. It can cloud your thinking, I should say. And you definitely should not be behind the wheel of a vehicle at any hour of the day or night."

Cathy Spiller, Vanzandt's wife and a nurse, testified that Vanzandt was a diabetic. She stated that if his blood sugar level was high, he would become boisterous and euphoric and his speech would be very slurred. Spiller testified that she took care of Vanzandt, reminding him of when to check his blood sugar level, eat, and take his insulin. Vanzandt would typically check his blood sugar level around 11 a.m., then eat and take his insulin. He would check his blood sugar again at 3 p.m. and 7 p.m., at which time he would again take his insulin.

Spiller testified that she had taken Vanzandt to the "Other Bar," a tavern in DeSoto which Vanzandt's family owned and where he worked, at around 11 a.m. on October 4, 1994. She returned to the "Other Bar" around 6 p.m., and she and Vanzandt spent the rest of the evening there socializing and talking to friends. Vanzandt drank ice water and she drank beer. They left around 1 a.m. to go and get something to eat. Vanzandt was tired and they were arguing about the radio. She remembered going somewhere else and stopping without getting out of the car, but she did not remember where.

When they were stopped by the State Police, Spiller had half a can of beer. She poured it out on the floorboard and put the can under the seat. After Vanzandt was arrested, the trooper told her what his bond would be and allowed her to leave. She went home, got the bond money, and returned to police headquarters. When she got there, Vanzandt was being loud and argumentative, which she said he does when his blood sugar is too high or too low.

Spiller also testified that she had spent a lot of time at the "Other Bar" and had seen many people under the influence of alcohol. She stated that when they were stopped, Vanzandt had some of the symptoms of alcohol intoxication, even though he had not been drinking. Spiller indicated that emotional distress, not eating, or too many activities would trigger a hyperglycemic or hypoglycemic episode. She also stated that Vanzandt had trouble with his balance even when he was not experiencing a hypoglycemic attack.

Russel Black testified that, until recently, he had worked for Vanzandt at both the "Other Bar" and another bar Vanzandt owned. On the night of October 4, 1994, he was in and out of the "Other Bar" throughout the evening. He saw Vanzandt talking to people

while his wife was drinking. He saw Vanzandt drinking a big cup of ice water, which is what he usually drank.

Paula Young testified that she worked for Vanzandt at the "Other Bar" and had known him for five years. She normally worked the 7 p.m. to 2 a.m. shift and was working on the night of October 4, 1994. Vanzandt and his wife were at the "Other Bar" throughout the evening. Young served Vanzandt ice water in what she described as a large "Hardee's Moose Cup." She stated that later in the evening she took a drink from Vanzandt's cup and that it contained ice water. To her knowledge, Vanzandt never drank alcohol. Later in the evening Vanzandt appeared tired, and he and his wife were arguing.

Terry Egbert testified that he got off work around midnight and stopped at the "Other Bar." He saw Vanzandt, whom he knew, and Spiller. Vanzandt called him over and wanted to talk about some business. He remembered Young serving Vanzandt ice water because he remembered making a joke about it. He stated he and Vanzandt had a serious business conversation and that Vanzandt did not appear to be under the influence of alcohol.

Lester Vanzandt testified that he was a diabetic. He had been on insulin until June 1995. After going to the hospital with a foot infection, it was determined that he was being overmedicated and was switched to another medication. Vanzandt stated that he had experienced hypoglycemic attacks in the past. They were usually triggered by stress, tiredness, or not eating right. He would start to get tunnel vision, he would sweat, his speech would be slurred, he would have trouble with his balance, and he would become confused.

Vanzandt testified that he had gone to work around 11 a.m. By the time his shift ended at 7 p.m. his wife was there. They sat around socializing and talking to friends. He drank ice water while his wife drank beer. Vanzandt also testified that he had taken insulin at 11 a.m. and 7 p.m. that day.

Vanzandt and his wife left the "Other Bar" around 1 a.m. They were going to get something to eat and were arguing about the radio. Vanzandt was tired and hungry, but Spiller did not want to go home. They stopped at "Vanzandt's," the other bar Vanzandt's family owned, but did not go in. He and Spiller continued to argue until he saw the flashing red lights in his rearview mirror. He noticed that when he got out of the car he was having trouble standing.

The trial court found Vanzandt not guilty of driving under the influence of alcohol, but guilty of driving under the combined influence of alcohol and drugs.

On appeal, Vanzandt argues first that count II of the information, which charged him with driving under the combined influence

of alcohol and drugs, was defective because it failed to properly set forth the elements of the offense.

■ Section 11—501 of the Vehicle Code provides:

"A person shall not drive or be in actual physical control of any vehicle within this State while:

* * *

(4) under the combined influence of alcohol and any other drug or drugs to a degree that renders the person incapable of safely driving." 625 ILCS 5/11—501(a)(4) (West Supp. 1993).

Count II of the information charges that Vanzandt committed the offense of:

"*DRIVING UNDER THE INFLUENCE OF ALCOHOL (A)(4)* in that said defendant knowingly drove a 1989 Pontiac, while the defendant was under the influence of alcohol or drugs or a combination of alcohol and drugs, CLASS A MISDEMEANOR in violation of ILCS, 1992, Ch. 625, Sec. [*sic*] 5/11—501(a)(4)."

■ As Vanzandt notes, the charge fails to properly set forth the elements of the offense. Count II charges that Vanzandt drove under the influence of alcohol *or* drugs *or* a combination of alcohol and drugs. The charge also fails to allege that he was incapable of driving safely.

Although Vanzandt objected to the late filing of count II, he did not attack the sufficiency of the charge at trial. Where the sufficiency of a charge is attacked for the first time on appeal, the standard of review is whether the charging instrument apprised the defendant of the precise offense charged with enough specificity to permit preparation of his defense and allow pleading a resulting conviction as a bar to further prosecution arising out of the same conduct. *People v. Pujoue*, 61 Ill. 2d 335, 335 N.E.2d 437 (1975). In other words, the issue before this court is whether the defect in the information prejudiced the defendant in preparing his defense. *People v. Thingvold*, 145 Ill. 2d 441, 584 N.E.2d 89 (1991).

Vanzandt advances no argument regarding how he was prejudiced. Reviewing the record, we find that at the time Vanzandt objected to the filing of the information, defense counsel indicated that he did not believe there would be any evidence of drugs or alcohol, and when the prosecutor offered a continuance, defense counsel declined, stating that he did not think the new charge would affect Vanzandt's defense. Under such circumstances, it is apparent that Vanzandt was not prejudiced in the preparation of his defense.

■ Vanzandt argues next that the trial court erred in allowing, over his objection, the filing of count II immediately prior to trial. Vanzandt contends that the new charge interjected the issue of driv-

ing under the influence of drugs and that the last-minute filing of this charge deprived him of any opportunity to prepare an adequate defense. As noted above, however, defense counsel stated, at the time he objected to the filing of count II, that he did not believe there would be any evidence of either alcohol or drugs, and counsel declined the offer of a continuance because he did not think that the new charge would affect Vanzandt's defense. Under such circumstances we cannot find that the trial court erred in allowing the State to file count II.

Vanzandt's third argument on appeal is that the trial court's finding of guilt on the charge of driving under the combined influence of alcohol and drugs in violation of section 11—501(a)(4) is legally inconsistent with the finding of not guilty of the charge of driving under the influence of alcohol in violation of section 11—501(a)(2). Citing *People v. Jacquith*, 129 Ill. App. 3d 107, 472 N.E.2d 107 (1984), and *People v. Bitterman*, 142 Ill. App. 3d 1062, 492 N.E.2d 582 (1986), Vanzandt maintains that to be found guilty of a violation of section 11—501(a)(4) the State was required to prove that he was under the influence of alcohol, a finding specifically rejected by the trial court's finding of not guilty of driving under the influence of alcohol. We do not agree with Vanzandt's contentions.

In both *Jacquith* and *Bitterman* the court held that section 11—501(a)(4) required proof that a defendant was under the influence of both alcohol and drugs. In *Jacquith*, the court held that the testimony of the two arresting officers was sufficient to prove the defendant guilty of driving under the influence of alcohol because determining whether a person was under the influence of alcohol was within the common experience of the average person. The court further held, however, that the determination of whether a person was under the influence of drugs was not within the experience of the officers and thus their testimony was insufficient to support a finding that the defendant had operated a motor vehicle while under the influence of a drug. Because the State failed to offer any evidence that the defendant was under the influence of a drug, the court reversed his conviction.

In *Bitterman*, the defendant admitted that he had been drinking when he was stopped by the police. When the officer asked the defendant if "he had anything in his possession that he might regret," the defendant produced an envelope containing a green leafy substance later identified as marijuana. When the officer asked the defendant if he had been smoking or was under the influence of marijuana, he responded affirmatively. At trial, the arresting officer was allowed to testify that the defendant was under the influence of alcohol at the

time of his arrest, but the officer was not allowed to offer a similar opinion as to drug intoxication. The defendant testified that he did not remember the officer asking about marijuana usage or telling the officer that he had been smoking marijuana, but he admitted giving the officer a packet of "some substance," the contents of which he claimed to be unaware.

On appeal, the defendant argued that there was insufficient proof of drug intoxication. In affirming his conviction, the court in *Bitterman* noted that in addition to the defendant's admission that he had been at a party where he obtained the marijuana found on his person, he admitted smoking and being under the influence of the drug.

Neither *Jacquith* nor *Bitterman* supports defendant's arguments. The defendant's conviction in *Jacquith* was reversed because the State failed to provide any evidence that the defendant was under the influence of a drug. The defendant's conviction in *Bitterman* was affirmed because his admission that he was under the influence of marijuana constituted direct proof that he was under the influence of a drug.

■ Vanzandt's argument in the present case is premised on the assumption that to sustain a conviction under section 11—501(a)(4) the State must show the same level of alcohol intoxication as would be necessary to sustain a conviction for violation of section 11—501(a)(2). This assumption is incorrect. Section 11—501(a)(2) required that there be sufficient alcohol in the person's blood to render him incapable of driving safely. Section 11—501(a)(4) does not require that the person have enough alcohol in his system to render him incapable of driving safely, or that he have sufficient drugs in his system so as to render him incapable of driving safely, only that there be some alcohol present and some other drug or drugs present and that the *combined* influence of the two render him incapable of driving safely. To interpret the statute otherwise would reduce it to mere surplusage. If defendant had enough alcohol in his system to render him incapable of driving safely, he could be charged under section 11—501(a)(2). If he had enough drugs in his system to render him incapable of driving safely, he could be charged under section 11—501(a)(3) (625 ILCS 5/11—501(a)(3) (West Supp. 1993)). There would be no need for section 11—501(a)(4) under Vanzandt's interpretation.

Vanzandt's final argument is that the State failed to prove him guilty of driving under the combined influence of alcohol and drugs beyond a reasonable doubt. Specifically, Vanzandt maintains that the only evidence regarding the presence of a drug was his testimony that he was a diabetic and that he had taken insulin around 5 o'clock

the previous evening. He contends that his apparently intoxicated behavior was the result of a hypoglycemic attack.

■ The elements of the offense of driving under the combined influence of alcohol and any other drug or drugs are: (1) the person is driving or is in actual physical control of any vehicle; (2) while under the *combined* influence of alcohol and any other drug or drugs; (3) to a degree which renders such person incapable of safely driving. 625 ILCS 5/11—501(a)(4) (West Supp. 1993). In other words, the person must have consumed alcohol, ingested some other drug or drugs, and been under the combined influence of both. The essence of the offense is that the alcohol and the other drug or drugs, acting together, render the person incapable of driving safely. It is axiomatic that the other drug or drugs must have some intoxicating effect, either on its own or because of being combined with alcohol.

■ It is well established that even a layman is competent to testify regarding intoxication from alcohol, because such observations are within the competence of all adults of normal experience. *Jacquith*, 129 Ill. App. 3d at 113, 427 N.E.2d at 111, citing *People v. Bobczyk*, 343 Ill. App. 504, 99 N.E.2d 567 (1951). With respect to drugs, we have held that the testimony of police officers that a defendant was under the influence of drugs would be sufficient, provided that the officers had relevant skills, experience, or training to render such an opinion. *Bitterman*, 142 Ill. App. 3d at 1064-65, 492 N.E.2d at 584.

■ In the present case, the trial court found Vanzandt not guilty of driving under the influence of alcohol. This necessarily implies that the trial court found that he did not have sufficient alcohol in his system to render him incapable of driving safely. To sustain the conviction, therefore, there must be evidence in the record that Vanzandt ingested a drug or drugs that, in combination with the alcohol, rendered him incapable of driving safely. The testimony of both Hafford and Vanzandt establish that Vanzandt had taken insulin earlier that evening. Unlike the defendant in *Bitterman*, however, Vanzandt never admitted "being under the influence" of insulin. Further, there is no evidence that would indicate that insulin, either by itself or in combination with alcohol, would render a person incapable of driving safely. Although Hafford testified that alcohol would affect a diabetic's blood sugar level, which in turn would affect a person's coordination and ability to think clearly, he is not qualified to give expert testimony on the complex physiological effects that alcohol produces in diabetics.

Because the State has failed to produce any evidence that Van-

zandt was under the combined influence of alcohol and insulin, the judgment of the circuit court of Perry County must be reversed.

Reversed.

WELCH and MAAG, JJ., concur.