**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2021 IL App (3d) 180726-U

Order filed September 22, 2021

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2021

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0726 Circuit No. 18-DT-569 |
| | ) | |
| JODI TROTTER, | ) ) | Honorable Chrystel L. Gavlin, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justice Daugherity concurred in the judgment.
Justice Wright dissented.

**ORDER**

¶ 1      *Held*:   The evidence was insufficient to support defendant's conviction for driving under the influence of drugs.

¶ 2      Defendant, Jodi Trotter, appeals from her conviction for driving while under the influence (DUI) of drugs. First, Trotter contends that the State did not prove beyond a reasonable doubt that she committed the offense. Second, she argues that defense counsel was ineffective

for failing to file a motion to suppress her statements during the traffic stop. We reverse Trotter's conviction.

¶ 3                                    I. BACKGROUND

¶ 4        The State charged Trotter with DUI of a drug or combination of drugs to a degree that renders the person incapable of driving safely (625 ILCS 5/11-501(a)(4) (West 2018)). Trotter waived her right to a jury trial and proceeded to a stipulated bench trial. In an order signed by the court, the parties stipulated to the introduction of the following evidence: (1) the trooper's police report, (2) the trooper's alcohol and drug influence report, (3) the squad car video, (4) a photograph of Trotter's Adderall prescription bottle, and (5) her urine test results from the Illinois State Police (ISP) laboratory.

¶ 5        The court read the order listing the stipulated evidence into the record. The court stated, "they are going to stipulate to a[n] *** Illinois State Police report that Trooper Cox made. *** Illinois State Police alcohol or drug influence report, *** the picture of the prescription bottle of amphetamine/pills, the ISP lab report and the Illinois State Police squad video."

¶ 6                                 A. Stipulated Evidence

¶ 7                                    1. Police Report

¶ 8        In her report, Illinois State Trooper Shelley Cox said that on May 3, 2017, she was traveling northbound on Interstate 55. Around 7 a.m., a "fast moving vehicle" approached her squad car from behind. Cox identified the car as a black Ford Edge and later identified the driver as Trotter. Cox noted that Trotter's Ford swayed within its lane and overtook her squad car on the right. To avoid a slower moving vehicle in the right lane, Trotter cut in front of Cox's squad car. While following the Ford, Cox reached speeds in excess of 80 miles per hour. Cox positioned herself parallel to Trotter's vehicle and noted that Trotter seemed unaware of her

presence. Again, Trotter passed Cox and continued to swerve in and out of her lane. Cox initiated a stop of Trotter's vehicle.

¶ 9    When Cox asked if Trotter knew the reason for the stop, she responded, "Because I couldn't keep in my lane." Trotter said she did not notice Cox's squad car either time she passed it.

¶ 10    Cox noted Trotter's "peculiar facial movements" and delayed responses. Specifically, that she "rotat[ed] her jaw, and seemed to be deliberately attempting to focus" to answer Cox's questions. She observed Trotter "squint then open her eyes wide when attempting to focus *** and answer questions." Trotter appeared confused.

¶ 11    During their conversation, Trotter initially stated she consumed four Adderall. Cox noted that Trotter later said she consumed "8 Adderall in the last 24 hours 7 of which were within the last 7 hours." Trotter showed Cox her prescription bottle, which indicated her prescribed dosage of "two Adderall twice daily." Trotter also retrieved from her pocket an Adderall prescription in another person's name. Trotter indicated it was her son's prescription. When asked if she had any other medication, Trotter gave Cox another Adderall prescription bottle in her name. Trotter identified the pills within that bottle as hydrocodone. Trotter indicated that she received a hydrocodone prescription approximately six months earlier. Trotter did not provide proof of her prescription or explain why she had hydrocodone in her possession.

¶ 12    Cox requested that Trotter perform standardized field sobriety tests. Following the tests, Cox placed her under arrest for DUI of drugs. During the search of Trotter incident to arrest, Cox discovered an empty Adderall prescription bottle prescribed to yet another person. Later, Trotter submitted a urine sample for testing.

¶ 13                              2. Alcohol and Drug Influence Report

3

¶ 14    Following Cox's DUI of drugs investigation, she completed an Alcohol and Drug Influence Report and recorded Trotter's performance on the standardized field sobriety tests, Cox's observations of Trotter's appearance, her admissions to consuming Adderall, and Cox's opinion of Trotter's ability to drive. Initially, Cox noted that Trotter did not show any clues of impairment on the horizontal gaze nystagmus (HGN) test. Regarding the walk-and-turn test, the report showed that Trotter stopped walking, missed heel to toe, stepped off the line, and raised her arms. Cox indicated a total of four clues of impairment. During Trotter's performance of the one-leg stand test, Cox noted that Trotter swayed while balancing, used her arms for balance, and put her foot down. Cox noted a total of three clues of impairment.

¶ 15    Cox recorded additional observations of Trotter, which included her "mussed" condition. Trotter was "sleepy," "cooperative," and "polite." Further, Cox observed her speech to be "thick tongued" and "confused."

¶ 16    Cox noted Trotter's statement that she consumed seven Adderall in the last 24 hours. The report stated Trotter consumed one Adderall pill at 11 a.m. and three Adderall pills at 1 a.m. Later, Trotter consumed four Adderall pills when she left Peoria that morning at 5 a.m.

¶ 17    Cox concluded that based on Trotter's "obvious" effects of drug consumption, she was unfit to drive.

¶ 18                                    3. Squad Car Video

¶ 19    At the start of the squad car video, Cox drove parallel with Trotter. Trotter sped past Cox and weaved in and out of her lane. Trotter changed lanes and continued to weave in and out of her lane. Cox initiated the traffic stop. Cox began the conversation by asking Trotter a series of questions. During their conversation, Cox asked Trotter to speak up several times. The loud

noise of heavy traffic can be heard throughout the duration of the stop. Trotter's responses are unintelligible while in her vehicle.

¶ 20        Cox asked, "Do you know why I am stopping you, Ma'am?" After a pause, Cox stated, "you had difficulty keeping in your lane of traffic?" Cox asked where Trotter came from and where she was going. Cox inquired where Trotter worked and how she got to the location of the stop. Then, Cox asked several additional questions, however, Trotter's responses are inaudible over the sounds of traffic. Cox informed Trotter of her observations and belief that she was under the influence of a drug other than Adderall.

¶ 21        Cox asked Trotter to describe when she passed her squad car before being pulled over. Then asked, "do you remember when you passed me?" Cox explained to Trotter that she drove a fully marked squad car and described what happened when Trotter passed her on the highway. Before Cox requested that Trotter perform standardized field sobriety tests, she asked Trotter again about the hydrocodone pills.

¶ 22        Cox then asked Trotter to exit her vehicle to perform standardized field sobriety tests. Cox directed Trotter to stand in front of her squad vehicle, and behind Trotter's vehicle to perform the tests. Then, Cox asked if Trotter had any medical problems that would affect her ability to perform the tests. Trotter indicated toward her lower leg and foot area. Trotter stated that area was red but that she did not know why.

¶ 23        First, Cox performed the HGN test. Trotter stood straight and appeared to follow Cox's directions. Second, Trotter performed the walk-and-turn test. During this test, Trotter raised her arms for balance during the entirety of the test, stepped off the line, and stopped walking. Third, Trotter completed the one-leg stand test. Upon starting the test, Trotter immediately dropped her

5

foot to the ground. She continued to sway, raised her arms for balance, and dropped her foot five more times.

¶ 24    After the tests, Cox brought Trotter to the front of her vehicle, and closer to the camera in the squad car. The video showed Trotter's unusual eye and mouth movements. Cox restated her belief that Trotter was under the influence of a drug other than Adderall, specifically, hydrocodone. Cox placed Trotter under arrest.

¶ 25                          4. Trotter's Adderall Prescription Bottle

¶ 26    The photograph of the prescription bottle showed Trotter's prescribed Adderall dosage of two tablets twice daily. The photograph also indicated that the Adderall prescription contained "Amphetamine."

¶ 27                          5. Trotter's Urine Test Results

¶ 28    The laboratory report indicated that Trotter's urine sample contained amphetamine and phenylpropanolamine.

¶ 29                          B. Circuit Court's Ruling

¶ 30    Following the court's review of the stipulated evidence, Trotter moved for a directed finding, arguing that the State failed to prove the effects Adderall has on a person's ability to drive. In response, the State argued Trotter's admissions of Adderall consumption and Cox's observations. The State asked the court to take judicial notice that Adderall is considered a controlled substance, generally.

¶ 31    In its ruling the court stated that it "considered the evidence presented by stipulation. *** the alcohol influence report. *** the Illinois State Police field report. *** [A] video and*** the pill bottle with *** Trotter's name for the amphetamine, and also *** the Illinois State Police

\*\*\* lab report with the findings of the amphetamine[ ]." The court denied Trotter's motion for a directed finding.

¶ 32    The court found Trotter guilty of DUI of drugs and sentenced her to 12 months of court supervision. Trotter appeals.

¶ 33                              II. ANALYSIS

¶ 34                         A. Sufficiency of the Evidence

¶ 35    Trotter argues the evidence was insufficient to prove her guilty beyond a reasonable doubt of DUI of drugs. We find that the evidence is insufficient to prove that Trotter's Adderall consumption rendered her incapable of driving safely and reverse her conviction.

¶ 36    When a defendant makes a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "In reviewing the sufficiency of the evidence, this court 'should draw only reasonable inferences in favor of the [State]; we should not make random speculations in favor of the prosecution.' " (Emphasis omitted.) *People v. Petty*, 2020 IL App (3d) 180011, ¶ 21 (quoting *People v. Dye*, 2015 IL App (4th) 130799, ¶ 12). "A conviction will be reversed only where the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Belknap*, 2014 IL 117094, ¶ 67. When the evidentiary record raises a reasonable doubt of defendant's guilt, the reviewing court must reverse the conviction. *People v. Workman*, 312 Ill. App. 3d 305, 310 (2000).

¶ 37        As charged in this case, section 11-501(a)(4) of the Illinois Vehicle Code states: "A person shall not drive or be in actual physical control of any vehicle within this State while: *** under the influence of any other drug or combination of drugs to a degree that renders the person incapable of safely driving." 625 ILCS 5/11-501(a)(4) (West 2018). "There is no 'generic' offense of 'driving under the influence.' " *Workman*, 312 Ill. App. 3d at 310 (quoting *People v. Bitterman*, 142 Ill. App. 3d 1062, 1064 (1986)). Therefore, the State must prove that the drug in question has "some intoxicating effect." *Id.*

¶ 38        Observations of alcohol consumption are a part of a typical adult experience; therefore, a lay person may testify to a person's alcohol intoxication. See *id.* In contrast, to form an opinion that Trotter was under the influence of Adderall requires a person to have "relevant skills, experience, or training to render such an opinion." *Id.*

> "[W]hen there is no competent evidence by a qualified witness regarding the nature and effect of the drug alleged to have been ingested and the defendant has not admitted to taking the drug and being under the influence, this lack of competent testimony may create a reasonable doubt of the defendant's guilt, absent other sufficiently incriminating evidence." *Id.* at 311.

¶ 39        We find the evidence insufficient to sustain Trotter's conviction for DUI of drugs because the evidence failed to establish that Trotter's Adderall consumption rendered her incapable of driving safely. See 625 ILCS 5/11-501(a)(4) (West 2018). Specifically, the stipulated evidence (1) lacked a qualified opinion regarding whether Adderall consumption has an intoxicating effect, and (2) failed to show that Trotter's impairment was attributable to her Adderall consumption.

8

¶ 40    First, we cannot rely on Cox's occupation as a trooper to infer that she also possessed the training and qualifications necessary to render an opinion regarding the effects of Adderall consumption. See, *e.g.*, *Workman*, 312 Ill. App. 3d at 310 (finding the officer lacked the specialized expertise on lorazapam and its effects on a driver to give opinion testimony for the offense DUI of drugs); *People v. Vanzandt*, 287 Ill. App. 3d 836, 845 (1997) (finding the officer unqualified to give an expert opinion on the combined effects of alcohol and diabetes); *People v. Jacquith*, 129 Ill. App. 3d 107, 109, 113 (1984) (finding testimony from the officer did not adequately establish the expertise required to sustain a conviction for DUI of drugs). Cox's testimony cannot be construed as an expert opinion indicating that Trotter's Adderall consumption impaired her ability to drive because the stipulations included no expert qualifications. Additionally, Cox could not provide a lay opinion on this topic because, unlike the commonly known effects of alcohol consumption, the effects of Adderall consumption are not commonly known. See *Workman*, 312 Ill. App. 3d at 310.

¶ 41    Second, the remaining evidence fails to inferentially establish that Trotter's Adderall consumption caused her impaired driving. "An inference is a factual conclusion that can rationally be drawn by considering other facts." *People v. Casciaro*, 2015 IL App (2d) 131291, ¶ 89. Due process requires that the State prove beyond a reasonable doubt "every fact necessary to constitute the crime with which the defendant is charged." *People v. Funches*, 212 Ill. 2d 334, 342 (2004). An inference does not violate due process when: (1) there is a rational connection between the basic fact and the presumed fact, (2) the presumed fact more likely than not flows from the basic fact, and (3) the inference is supported by corroborating evidence. *Casciaro*, 2015 IL App (2d) 131291, ¶ 89.

¶ 42    The evidence from the stipulations established that Cox observed Trotter drive erratically and Trotter admitted to consuming Adderall. Because of the complex relationship between the consumption of various prescription drugs and physical impairment, the fact finder could not rationally presume from this evidence that the Adderall consumption impaired Trotter's ability to drive. Furthermore, while the presumed fact, that the Adderall impaired Trotter's ability to drive flows from the basic fact of her consumption, this inference is not supported by corroborating evidence. To the contrary, the State submitted no evidence that the pills in the Adderall prescription bottle were, in fact, Adderall. Cox herself stated that she believed Trotter was not under the influence of Adderall, but rather, under the influence of another intoxicating substance. Cox opined that Trotter suffered from the "obvious" effects of drug consumption and was unfit to drive. Moreover, the video in the record offers no corroboration of the admission attributed to Trotter in Cox's report. Therefore, under the facts of this case the stipulated evidence failed to inferentially establish that Trotter's Adderall consumption caused her impaired driving.

¶ 43    In reaching this conclusion, we reject the State's argument that Trotter "failed to provide a critical piece of evidence on the record on appeal, *i.e.*, the written agreed statement of facts relied upon by the trial court." However, the State's argument is defeated by the record. The common law record includes the parties' written stipulation and the transcripts record the court's reading of the stipulation into the record. Therefore, the stipulations appear in at least two locations in the record.

¶ 44    As the evidence is insufficient to prove Trotter's guilt of DUI of drugs beyond a reasonable doubt, we reverse her conviction outright. This ruling has rendered consideration of Trotter's second issue moot. Therefore, we take no position on whether counsel provided ineffective assistance for failing to file a motion to suppress evidence.

¶ 45                                    III. CONCLUSION

¶ 46        The judgment of the circuit court of Will County is reversed.

¶ 47        Reversed.

¶ 48        JUSTICE WRIGHT, dissenting:

¶ 49        I respectfully dissent. First, it is my opinion that the evidence, viewed in the light most favorable to the State, supports the circuit court's finding that defendant committed the offense of DUI of drugs. See 625 ILCS 5/11-501(a)(4) (West 2018). Second, I would find that defendant failed to show ineffective assistance of counsel where her proposed motion to suppress lacked merit.

¶ 50                              A. Sufficiency of the Evidence

¶ 51        From my review, the evidence was clearly sufficient to prove that defendant was under the influence of the drug Adderall, which rendered her unable to drive safely. The stipulated evidence documented defendant's poor driving that prompted Trooper Cox to stop defendant's vehicle. Defendant admitted to Cox that she consumed "8 Adderall in the last 24 hours 7 of which were within the last 7 hours" and admitted that she "couldn't keep [her vehicle] in [her] lane." Defendant showed Cox her prescription bottle, which indicated her prescribed dosage of "two Adderall twice daily." Cox discovered that defendant possessed two additional Adderall prescription bottles prescribed to other individuals. Cox observed further indications of impairment, including defendant's apparent confusion, difficulty concentrating, unusual facial movements, and poor performance on the standardized field sobriety tests. Cox believed that defendant suffered from the "obvious" effects of drug consumption and therefore was unfit to drive. See *Bitterman*, 142 Ill. App. 3d at 1065. Much of the impairment reported by Cox was corroborated by the video recording of the stop. Specifically, the video shows defendant's poor

11

driving, peculiar eye and mouth movements, and poor performance on the standardized field sobriety tests. Viewing this evidence in the light most favorable to the State, defendant's impairment could only be due to her admitted excess consumption of Adderall. Accordingly, I would find this evidence sufficient to prove defendant guilty of DUI of drugs beyond a reasonable doubt.

¶ 52   I also disagree with the amount of deference afforded by the majority to the circuit court's factual findings. Specifically, I would defer to the circuit court's findings noting defendant's "peculiar facial movements, delayed responses, deliberate attempt to focus on answering the questions" as shown in the squad video because the court was in the unique position to view both defendant's eye and mouth movements in the video recording and compare those movements to defendant's physical appearance while in court. See *People v. Deleon*, 227 Ill. 2d 322, 332 (2008) ("[W]e give deference to the trial court as the finder of fact because it is in the best position to observe the conduct and demeanor of the parties and witnesses.").

¶ 53   The majority contends the State failed to satisfy the statutory requirements to sustain a conviction under section 11-501(a)(4) of the Illinois Vehicle Code. Not only does section 11-501(a)(4) extend to the consumption of any drug or combination of drugs, but amphetamine is a controlled substance listed in the Illinois Controlled Substances Act. See 720 ILCS 570/206(d)(1) (West 2018); *People v. Sutherland*, 223 Ill. 2d 187, 243 (2006) (the trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances but rather be satisfied that all evidence, taken together, establishes defendant's guilt). According to defendant's prescription bottle, Adderall contains amphetamine. Further, scientific testing showed that amphetamine was present in defendant's urine. Immediately before the amphetamine was detected, defendant was observed driving poorly and exhibiting several clues

of impairment. The reasonable inference which flows from these facts is that defendant's consumption of Adderall rendered her incapable of driving safely. This inferential proof of intoxication eliminated the need for testimony from a qualified expert regarding the effects of Adderall consumption. See *People v. Morris*, 2014 IL App (1st) 130152, ¶ 20 ("Circumstantial evidence alone may suffice to prove defendant guilty of DUI. [Citation.] Where the arresting officer provides credible testimony, scientific proof of intoxication is unnecessary.").

¶ 54 I also disagree with the majority's reliance on *Workman*, 312 Ill. App. 3d at 310, and *Vanzandt*, 287 Ill. App. 3d at 845. Citing these cases, the majority finds that an unqualified officer's testimony fails to prove defendant guilty of DUI of drugs. Unlike *Workman*, where the State presented no evidence of the defendant's poor driving, a blood or urine test confirming the defendant's consumption of a drug, and the defendant denied consuming drugs; here, the State presented substantial evidence of defendant's consumption of Adderall and resulting impairment. See *Workman*, 312 Ill. App. 3d at 307-09. Unlike *Vanzandt*, where the defendant refused standardized field sobriety testing and a breathalyzer test, and the defendant showed that he suffered from diabetes, which could have caused the appearance of intoxication; the instant defendant participated in field sobriety tests that indicated impairment. See *Vanzandt*, 287 Ill. App. 3d at 838-39, 845. Overall, unlike both cases, here the court received substantial evidence of defendant's impaired driving, and defendant acknowledged consuming Adderall, which contains the controlled substance amphetamine.

¶ 55                                B. Ineffective Assistance of Counsel

¶ 56 As I would find the evidence sufficient to sustain defendant's conviction, I also address defendant's ineffective assistance of counsel issue in this separate offering. Defendant argues she received ineffective assistance where counsel failed to move to suppress defendant's statements

13

made during the traffic stop. Defendant contends that Cox's questioning turned the stop into a custodial interrogation and Cox did not provide the *Miranda* warnings before initiating the custodial interrogation.

¶ 57    To prevail on an ineffective assistance of counsel challenge, a defendant must show: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 US. 668, 694 (1984). When defendant alleges ineffective assistance due to counsel's failure to file a suppression motion, "the defendant must demonstrate that the unargued suppression motion is meritorious, and that a reasonable probability exists that the trial outcome would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 15. "The failure to file a motion to suppress does not establish incompetent representation when the motion would have been futile. *People v. Patterson*, 217 Ill. 2d 407, 438 (2005).

¶ 58    Before a police officer may conduct a "custodial interrogation," the officer must provide the suspect a series of prophylactic warnings. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of [her] freedom of action in any significant way." *Id.* To determine whether a traffic stop has transformed into a custodial interrogation, a court may consider "the location, time, length, mood and mode of the interrogation; the number of police officers present; the presence or absence of the accused's family or friends; any indicia of formal arrest; whether the accused is allowed to walk from the location of the interrogation unaccompanied by police; and the age, intelligence and mental makeup of the accused." *People v. Rivera*, 304 Ill. App. 3d 124, 128 (1999).

14

¶ 59    Here, from my review of the record, I would conclude that *Miranda* warnings were not required because defendant was not subject to a custodial interrogation. First, when the police-suspect interaction began, defendant was seated in the driver's seat of her vehicle stopped on the side of the road. Defendant remained in her vehicle until Cox asked her to perform standardized field sobriety tests. Defendant did not enter Cox's vehicle until Cox placed her under arrest. Second, regarding the "mood and mode" of the questioning, it was reasonable for Cox to speak loudly to ensure that defendant could hear Cox over the traffic noise. Cox's repeated questions and serious tone did not signal a custodial interrogation but were due to the ambient noise of the location. In light of the location, Cox's mood and mode of questioning, at most, only slightly indicates a custodial interrogation. *Cf. People v. Alfaro*, 386 Ill. App. 3d 271, 294-97 (2008) (circuit court relied on defendant's location at the sheriff's office, the time, and the mood of the questioning to find a custodial interrogation). Third, the stop was relatively brief and focused on the DUI investigation that justified it. Fourth, Cox was the only officer present at the scene. Fifth, Cox allowed defendant to exit her vehicle and, apart from conducting an officer's safety pat-down, did not touch defendant prior to her arrest. During the pat-down, Cox told defendant that she was not under arrest. Sixth, there was no indication that Cox formally arrested defendant until after defendant performed the standardized field sobriety tests. See *Rivera*, 304 Ill. App. 3d at 128. Importantly, Cox had not placed defendant under arrest or otherwise deprived defendant of her freedom of movement at the time of defendant's admissions. See *Miranda*, 384 U.S. at 444; see also *Berkemer v. McCarty*, 468 U.S. 420, 428 (1984) (a custodial interrogation occurs when law enforcement officers initiate questioning after a person has been taken into custody or otherwise deprived of freedom of action in a significant way). Therefore, I would find the traffic stop and subsequent DUI investigation did not rise to the level of a custodial interrogation

15

requiring *Miranda* warnings. Moreover, since defendant was not subject to a custodial interrogation, counsel was not ineffective for failing to raise this meritless issue. See *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 54.