THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOLLYN C. WORKMAN, Defendant-Appellant.

Second District   No. 2—98—1578

Opinion filed March 17, 2000.

Terry D. Slaw, of Levine, Shifrin & Associates, Ltd., of Rolling Meadows, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and William B. Thompson, both of Wheaton, for the People.

JUSTICE COLWELL delivered the opinion of the court:

Following a bench trial, defendant appeals his conviction of driving under the influence of a drug or combination of drugs to a degree that renders the person incapable of safely driving (625 ILCS 5/11—501(a)(3) (West 1996)). Defendant was acquitted of driving under the

influence of alcohol (DUI) and of driving under the influence of a combination of alcohol and any other drug (625 ILCS 5/11—501(a)(2), (a)(4) (West 1998)). Defendant claims the evidence was unsatisfactory regarding whether he was under the influence of a drug to the degree that it rendered him incapable of safely driving and thus the evidence was insufficient to find him guilty beyond a reasonable doubt. We reverse.

On January 25, 1998, Bensenville police officer Joseph Golbeck was on duty at about 10 p.m. when he went to the area of Grand Avenue and Crown Road in Bensenville. He had been on the police force for about 4½ years. Golbeck observed a vehicle in the ditch on the south side of Grand, and he remained at the scene about 25 minutes. A tow truck was blocking both eastbound lanes of Grand. While Golbeck was on the scene, he observed a red pickup truck westbound on Grand that stopped on the median. He saw defendant exit his pickup truck and walk back to the bumper area of his truck. Wondering why defendant stopped, Golbeck exited his vehicle and approached defendant. As defendant walked, he was swaying and stumbling, but he did not fall. Defendant stared at his bumper. Golbeck asked defendant what the problem was. Defendant explained that he thought he had been in an accident and that the tow truck had hit him. Golbeck did not observe any damage to the truck. He observed that defendant's speech was slurred, and he detected an odor of alcohol. Defendant said he had had one beer at work.

Defendant agreed to perform field sobriety tests. Defendant first performed the finger-to-nose test. He did not touch his nose, and during the fifth and sixth such test he used the wrong finger. The next test was the one-leg stand test where defendant was to stand on one leg, raise the other leg six inches off the ground, and count from "one thousand 1" to "one thousand 30." Defendant swayed, placed his foot down twice, and stopped at the count of 20. The next test was the walk and turn. Defendant was to walk nine steps heel to toe keeping one foot on the line, do a three-point turn, and walk back nine steps heel to toe. Defendant took 14 steps in one direction without touching heel to toe and then stopped. His steps were six inches apart. According to Golbeck, defendant failed these tests. He placed defendant under arrest for driving under the influence of alcohol and transported him to the police station.

At the station, a prescription bottle of lorazepam was found on defendant's person. The date of the prescription was January 25, 1998. Defendant agreed to a breath test. It was stipulated at trial that the test revealed a blood-alcohol content (BAC) of 0.01. Golbeck testified that he asked defendant if he had taken any of the pills. Defen-

dant said he had not. Golbeck opened the bottle and found 8 pills inside, although the prescription was for 30 pills. After the breath test, Golbeck again asked defendant if he had taken any pills, and defendant said he had taken eight of them. Defendant explained that the lorazepam pills were muscle relaxants and that they belonged to his wife. The officer later had defendant transported to the hospital because he was concerned about defendant possibly having taken an overdose of the pills.

Golbeck testified he arrested defendant for DUI. Golbeck had seen people under the influence of alcohol a couple of hundred times, and he had received police training in administering field sobriety tests. Regarding the detection of persons under the influence of drugs, he stated he received training for an eye test, the horizontal gaze nystagmus (HGN) test. Golbeck became suspicious of defendant's drug consumption at the police station after seeing that there were pills missing from the bottle taken from defendant's jacket and defendant's breath test showed only a BAC of 0.01.

On cross-examination, Golbeck stated there was nothing unusual about the way defendant operated his vehicle. Golbeck also did not find it unusual for defendant to pull over onto the median to look at his bumper if defendant believed he had had an accident. When he formulated his opinion that defendant was under the influence of alcohol, he had no other basis from which he could conclude at that time that defendant was under the influence of a drug. After the breath test, Golbeck asked defendant about the pills but did not ask when they were taken. Golbeck did not administer the HGN test and did not notice any change in the defendant after he blew the 0.01 BAC.

Clair Donaghey, a forensic chemist for the Du Page County sheriff's department, testified that the tablets from the bottle weighed a total of 0.63 grams, that one tablet weighed 0.07 grams, and that the tablets contained lorazepam.

Defendant moved for a directed finding on the charges of DUI and driving under the influence of alcohol or a combination of alcohol and any other drug. Defense counsel noted that section 11—501.2(b)(1) of the Illinois Vehicle Code (625 ILCS 5/11—501.2(b)(1) (West 1998)) raises a presumption that a person is not under the influence of alcohol if the BAC is 0.05 or less. The trial court granted the motion as to these two charges but denied the motion with respect to the charge of driving under the influence of a drug or a combination of drugs.

Defense counsel then examined Golbeck and asked if he had received some training in detecting whether an individual is under the influence of a drug. Golbeck stated that "they didn't go into [it] specifi-

cally. They showed us the heart and the nystagmus test. That's the only test I know as far as I know." Golbeck admitted that he did not administer the HGN test to determine whether defendant was under the influence of drugs. Golbeck acknowledged that defendant was taken to the hospital. Golbeck admitted that he had no training or experience regarding how the ingestion of lorazepam would affect a person's ability to drive. He admitted that defendant never said he was under the influence of alcohol or a drug or that the drug affected his driving.

Defendant testified that he worked two jobs. One job was at UPS unloading aircraft. He had had bad knees for the last five or six years. On January 25, he got up at 6 a.m. and went to the Hyatt Regency Hotel in Chicago to work at a Super Bowl party. He worked until 6 p.m. hauling and unloading cases of beer at the exhibition hall and setting up equipment. He went home to Bensenville at about 7 p.m. Later, he went to visit his father in Chicago at about 10:30 p.m. When he was on Grand Avenue, he saw the tow truck and thought there was an accident because he had heard some noise. He did not want to be involved in an accident and then leave. He stopped to check his truck and realized that there was no accident. He testified that his injuries prevented him from doing two of the tests because he was in pain: the one-leg stand and the walk-and-turn test. He denied making any admission that he consumed any pills that day and denied being under the influence of any drug.

Defendant later went to the Elmhurst Hospital and underwent medical tests but could not recall whether any urine or blood samples were taken. He denied drinking any beer that day. Defendant knew the bottle of pills was in his coat and that the prescription belonged to his wife. She had told him that if his knees got bad enough he should take the pills, but he denied taking any of the pills. Defendant stated he heard a noise that was consistent with a "swipe" to his truck, but he did not find any damage. He told the officer that he was in pain and that he did not feel comfortable taking the one-leg-stand test. He stated he walked the line, but the officer told him to stop. He admitted he did not touch his nose perfectly but explained that he was wearing a lot of winter clothing that might have affected his ability to perform the test.

With this factual background, we now consider defendant's challenge to the sufficiency of the evidence. The question before this court is whether, after viewing all of the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Moore*, 279 Ill. App. 3d 152, 154 (1996). A criminal conviction will not be set aside

unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Janik*, 127 Ill. 2d 390, 402 (1989). Where, as here, the evidentiary record raises a reasonable doubt of defendant's guilt, it is the duty of the reviewing court to reverse the conviction. *People v. Jacquith*, 129 Ill. App. 3d 107, 113 (1984).

■ It is undisputed that defendant was driving just before his arrest, and there is no indication that he was driving erratically. The State was required to prove beyond a reasonable doubt that defendant was driving (1) under the influence of a drug (2) to a degree that rendered him incapable of safely driving. The threshold question here is whether there was sufficient competent evidence to prove that defendant was under the influence of a drug. There is no "generic" offense of "driving under the influence" (*People v. Bitterman*, 142 Ill. App. 3d 1062, 1064 (1986)), and it is axiomatic that the drug in question must have some intoxicating effect (see *People v. Vanzandt*, 287 Ill. App. 3d 836, 845 (1997)).

■ It is well established that even a layperson is competent to testify regarding a person's intoxication from alcohol, because such observations are within the competence of all adults of normal experience. *Vanzandt*, 287 Ill. App. 3d at 845. The opinion of an officer regarding whether a person is under the influence of drugs is circumstantial evidence that may be considered sufficient provided that the officer has the relevant skills, experience, or training to render such an opinion; in other words, the officer would have to be qualified by the court as an expert in order to reach such a conclusion. *Bitterman*, 142 Ill. App. 3d at 1064-65 (explaining *Jacquith*, 129 Ill. App. 3d 107).

In *Jacquith*, the officers were not so qualified, and, as a result, the reviewing court reversed the accused's conviction of driving under the influence of both alcohol and drugs. There, neither officer involved testified that he had previous experience with narcotics users or that he had made arrests for driving under the influence of drugs. One officer testified only vaguely that he had training at the police academy in the areas of alcohol and drugs. The officer testified that the defendant smelled of alcohol, had slurred speech, was unable to balance himself, and was unable to touch his right finger to his nose. The defendant testified that he denied consuming drugs or alcohol, he was not offered a test at the police station, and he did not admit that he was under the influence of anything. In reversing the conviction, the reviewing court concluded that the officers' testimony, which was the only testimony offered by the State on the drug issue, did not display the level of expertise necessary to sustain the conviction of driving under the influence of drugs.

In *Bitterman*, the defendant was charged with driving under the combined influence of alcohol and drugs. The defendant admitted that he had been drinking when he was stopped by the police and then produced an envelope containing marijuana. When the officer asked the defendant if he had been smoking or was under the influence of marijuana, the defendant responded affirmatively. The officer testified regarding his observations that the defendant was under the influence of alcohol. The defendant's admissions together with the other evidence adduced at trial were found sufficient to sustain the conviction on appeal.

In *Vanzandt*, the defendant was acquitted of DUI but was found guilty of driving under the combined influence of alcohol and drugs. At trial, the defendant presented evidence that he was diabetic and that he had taken insulin several hours previously during the evening before his arrest. He contended that his behavioral symptoms were the result of a hypoglycemic attack. Unlike the defendant in *Bitterman*, the defendant in *Vanzandt* never admitted to "being under the influence" of insulin. The reviewing court concluded that there was no evidence offered that would indicate that insulin, either by itself or in combination with alcohol, would render a person incapable of driving safely. Although the officer testified that alcohol would affect a diabetic's blood sugar level and this in turn would affect a person's coordination and ability to think clearly, the reviewing court concluded that the officer was not qualified to give expert testimony on the complex physiological effects that alcohol produces in diabetics. Because the State otherwise failed to produce any evidence that the defendant was under the combined influence of alcohol and insulin, the reviewing court reversed the conviction.

■ The cases we have discussed illustrate that, in a case involving a charge of driving under the influence of a drug or combination of drugs, when there is no competent evidence by a qualified witness regarding the nature and effect of the drug alleged to have been ingested and the defendant has not admitted to taking the drug and being under the influence, this lack of competent testimony may create a reasonable doubt of the defendant's guilt, absent other sufficiently incriminating evidence.

■ Here, the officer did not testify that he had any significant experience or expertise in detecting whether a person was driving under the influence of drugs and whether the person was influenced by a drug to such a degree that it prevented his driving safely. The officer was not knowledgeable about lorazepam, its nature, or its effects on a driver. He did not display the level of expertise necessary to sustain the charge. The only test the officer claimed to have available to him

to detect whether someone was under the influence of a drug was the HGN test, a test he did not administer. The officer only became suspicious that defendant might be under the influence of something other than alcohol after he discovered the medicine bottle and after defendant had "passed" the breath test.

Although the State presented the testimony of a forensic chemist, she only testified regarding the weight and classification of the drug that was presumably ingested by defendant. There is no competent testimony whatsoever regarding the drug's physiological effects, the amount required to produce any significant effect, or how the drug would affect a person's ability to drive safely. There was conflicting evidence regarding whether defendant had actually taken any amount of the drug. It is unclear when he would have taken the drug that day. Defendant denied taking the drug and never admitted to being under the influence of any chemical substance. Although there were medical tests that could have been performed to determine whether defendant had in fact ingested a drug or was under the influence of a drug, none were produced at trial.

Applying the principles explained in *Jacquith*, *Bitterman*, and *Vanzandt* to the present case, we conclude that the evidence regarding whether defendant was under the influence of a drug and whether it affected his ability to drive safely is so unsatisfactory that it raises a reasonable doubt of defendant's guilt. We must therefore reverse defendant's conviction.

The judgment of the circuit court of Du Page County is reversed.

Reversed.

BOWMAN, P.J., and INGLIS, J., concur.