2024 IL App (1st) 220985-U

FIFTH DIVISION
March 22, 2024

No. 1-22-0985

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 9494 |
| | ) | |
| TRAVIS WALKER, | ) | Honorable |
| | ) | William G. Gamboney, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The evidence was insufficient to sustain defendant's conviction for aggravated driving while under the influence.

¶ 2    Following a jury trial, defendant Travis Walker was found guilty of aggravated driving while under the influence (DUI) (625 ILCS 5/11-501(a)(4), (d)(1)(H) (West 2018)) and sentenced to 20 months in prison. On appeal, Mr. Walker contends that (1) the State failed to prove beyond a reasonable doubt that, at the time he was in control of a vehicle, he was under the influence of any drug to a degree that rendered him incapable of safely driving; (2) the trial court erred in admitting his complete medical record from the hospital where he was treated on the day of the

incident leading to his arrest; and (3) he was denied his constitutional right to confrontation when the State relied on a certified copy of his driving abstract to prove the aggravating circumstance in its case.

¶ 3    The State concedes that it failed to prove Mr. Walker's guilt of aggravated DUI beyond a reasonable doubt. As both parties acknowledge, this renders any claim regarding admission of the medical records moot. But the State argues that the driving abstract was properly admitted and that this court should "affirm [Mr. Walker]'s conviction for felony driving while license revoked." However, as Mr. Walker points out in his reply brief, he was never charged with any crime other than aggravated DUI, driving while one's license is revoked is not a lesser included crime of aggravated DUI, and thus there is no basis for doing anything other than reversing this conviction.

¶ 4                                     I. BACKGROUND

¶ 5    Mr. Walker was charged by information with a single count of aggravated DUI (625 ILCS 5/11-501(a)(4), (d)(1)(H) (West 2018)). The State alleged that, on or about January 23, 2018, Mr. Walker drove or was in actual physical control of a motor vehicle while under the influence of phencyclidine (PCP) and cannabis to a degree that rendered him incapable of safely driving. This was charged as an aggravated offense based on his having committed this violation while he did not possess a driver's license, permit, restricted driving permit, judicial driving permit, or a monitoring device driving permit.

¶ 6    At trial, Jeremiah Coriano testified that at about 9:30 p.m. on January 23, 2018, he was driving his truck on the southbound entrance ramp to I-55 in La Grange when he saw a group of cars "steering clear" of a gray sport utility vehicle (SUV) in the middle lane. As Mr. Coriano continued up the ramp, the SUV moved into the left lane without signaling and then crashed into the concrete barrier between the northbound and southbound lanes. The SUV moved back into the

road, continued driving for about 100 feet, hit the barrier a second time, bounced off, and then hit the barrier a third time and stopped. According to Mr. Coriano, the highway was well-lit and dry, and the lanes were clearly marked.

¶ 7      Illinois State Police trooper Edward Kazupski testified that on January 23, 2018, at around 9:30 p.m., he responded to the scene of this accident. There, he saw an SUV on the left shoulder of the highway, with the driver's side "crashed up" against the left median. The front and middle of the driver's side of the SUV were damaged, the rear passenger side tire was shredded, and pieces of rubber littered the roadway. Trooper Kazupski also noticed a few hundred feet of scratch marks on the left median. The SUV was running with a key in the ignition. The driver's door was against the median, such that it could not open fully, and the driver was "squeezing out" of the vehicle as Trooper Kazupski approached on foot. In court, he identified Mr. Walker as the SUV's driver and sole occupant.

¶ 8      Trooper Kazupski asked Mr. Walker whether he was injured and inquired as to what had happened. Mr. Walker "seemed a little out of sorts." He was responsive to Trooper Kazupski's questions, but Trooper Kazupski had to repeat his questions several times, and Mr. Walker only gave short answers. At the time, Trooper Kazupski was not focused on conducting a DUI investigation; rather, he was trying to learn about the circumstances behind the crash. At some point, Mr. Walker reached around "on the top" of the SUV and said he was looking for its keys. Shortly thereafter, paramedics arrived on the scene and guided Mr. Walker into an ambulance. Trooper Kazupski "stayed back" and let the paramedics assess Mr. Walker for injuries. Trooper Kazupski administered an alcohol/drug influence report and conducted a Law Enforcement Agencies Data System (LEADS) check and learned Mr. Walker had a suspended driver's license that expired in 2006.

¶ 9      Illinois State Police trooper Christopher Tor testified that when he arrived at the scene, he saw an SUV up against the left median wall, which was scraped up with black tire marks. The SUV was damaged on the left side, its left front tire was flat, and its right rear tire was shredded. Trooper Kazupski was talking with Mr. Walker, whom Trooper Tor identified in court. Trooper Tor parked behind Trooper Kazupski and approached the SUV on foot.

¶ 10     Trooper Tor engaged Mr. Walker in conversation, asking him questions. Mr. Walker's answers were mumbled and unintelligible. He seemed confused, and Trooper Tor had to ask him questions several times before he received answers that made sense and that he could understand. Mr. Walker was not swaying.

¶ 11     Paramedics arrived and escorted Mr. Walker to an ambulance. Trooper Tor entered the ambulance to get an update on Mr. Walker's condition. As the paramedics treated Mr. Walker, he became agitated and combative. The paramedics put a spit hood on Mr. Walker and Trooper Tor assisted them in placing Mr. Walker in soft restraints. Eventually, Mr. Walker calmed down. Trooper Tor exited the ambulance, told Trooper Kazupski what had transpired, and directed him to follow the ambulance to the hospital. Trooper Tor remained at the scene to have the SUV towed.

¶ 12     Nurse Marija Milenkov testified that she treated Mr. Walker in the emergency room at La Grange Hospital. He had been brought into the emergency room in four-point restraints on a stretcher and was transferred to a bed without restraints. Ms. Milenkov assessed Mr. Walker for trauma and did not notice any signs of obvious injuries. She then performed a secondary, neurological assessment and assessment for function. She noted that Mr. Walker was alert and oriented, but his pupils were "sluggish." Per orders of a doctor, she obtained blood and urine samples and sent them to the hospital laboratory. She continued to treat Mr. Walker and gave him intravenous fluids. He was not given any medication.

¶ 13    Over Mr. Walker's objection, his 80-page medical record from La Grange Hospital was admitted into evidence. Ms. Milenkov testified that page 33 contained the results of the testing of his urine sample. Specifically, the medical record indicated that Mr. Walker's "urine chemistry" was "positive" for PCP and cannabis.

¶ 14    The State presented a certified copy of Mr. Walker's driving abstract, which was admitted into evidence, without objection. The abstract stated that, on January 23, 2018, a suspension was in effect for Mr. Walker's driver's license. The abstract also indicated that the expiration date on the license was June 26, 2006.

¶ 15    Mr. Walker made a motion for a directed verdict, which the trial court denied. Mr. Walker did not testify or present any evidence.

¶ 16    The jury found Mr. Walker guilty of aggravated DUI. Mr. Walker filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial, which he later amended. The trial court denied the motion. The trial court sentenced him to 20 months in prison. Mr. Walker filed a motion to reconsider his sentence, which the trial court denied.

¶ 17                                    II. JURISDICTION

¶ 18    Mr. Walker's motion to reconsider his sentence was denied on June 23, 2022, and he timely filed his notice of appeal that same day. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 603 (eff. Feb 6, 2013) and Rule 606 (eff. July 1, 2017), governing appeals from final judgments in criminal cases.

¶ 19                                    III. ANALYSIS

¶ 20    On appeal, Mr. Walker challenges the sufficiency of the evidence to sustain his conviction for aggravated DUI. The Illinois Vehicle Code (Code) defines the offense of DUI as "driv[ing] or

be[ing] in actual physical control of any vehicle within this State while: *** under the influence of any other drug [besides alcohol or an "intoxicating compound"] or combination of drugs to a degree that renders the person incapable of safely driving." 625 ILCS 5/11-501(a)(4) (West 2018). The offense is elevated to aggravated DUI if, as charged in this case, it was committed "while [the driver] did not possess a driver's license or permit or a restricted driving permit or a judicial driving permit or a monitoring device driving permit." *Id.* § 11-501(d)(1)(H).

¶ 21   When reviewing the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). Reversal is justified only where the evidence is "so unsatisfactory, improbable or implausible" that it raises a reasonable doubt as to the defendant's guilt (*People v. Slim*, 127 Ill. 2d 302, 307 (1989)) or where proof of an element of a crime is wholly lacking (*People v. Sweigart*, 2021 IL App (2d) 180543, ¶ 56).

¶ 22   Mr. Walker contends that the State failed to prove beyond a reasonable doubt that, at the time he was in control of a vehicle, he was under the influence of any drug to a degree that rendered him incapable of safely driving. He argues that the State relied on evidence that a urinalysis screening showed a positive result for PCP and cannabis, which, he asserts, was insufficient by itself to support his conviction. Noting that he never admitted to being under the influence or having ingested drugs, he maintains that the State was required to present evidence regarding the physiological effects of PCP or cannabis, the amount required to produce any significant effect, or the effects of those substances on a person's ability to drive safely. In the absence of any such evidence, he asserts that his conviction must be reversed. The State in this case concedes that "[w]ithout expert testimony regarding the intoxicating effects of PCP and [cannabis], the evidence

at trial was insufficient to sustain a conviction for DUI under Section 501(a)(4) according to existing jurisprudence."

¶ 23    The Code does not provide for a "generic" offense of DUI. *People v. Workman*, 312 Ill. App. 3d 305, 310 (2000). Rather, the State must prove that the specific drug identified in a charge has "some intoxicating effect." *Id.* Because observations of alcohol consumption are a part of a typical adult experience, a layperson may testify to a person's alcohol intoxication. *Id.*; see also *People v. Phillips*, 2015 IL App (1st) 131147, ¶ 18 (the testimony of a single, credible police officer may alone sustain a conviction for driving under the influence of alcohol). However, to form an opinion that a defendant was under the influence of a substance other than alcohol, a witness, including a police officer, must have relevant skills, experience, or training to render such an opinion. *Ciborowski*, 2016 IL App (1st) 143352, ¶ 79; *Workman*, 312 Ill. App. 3d at 310. When an officer provides such testimony, his or her experience and training in the detection of controlled substances must be taken into account. *People v. Gocmen*, 2018 IL 122388, ¶ 31. If no qualified witness provides competent evidence regarding the nature and effect of the drug alleged in a particular case, and the defendant has not admitted to taking that drug and being under its influence, then the "lack of competent testimony may create a reasonable doubt of the defendant's guilt, absent other sufficiently incriminating evidence." *Workman*, 312 Ill. App. 3d at 311.

¶ 24    We agree with the parties that this conviction cannot stand. Mr. Walker never admitted to consuming PCP or cannabis or to being under the influence of those substances. The urinalysis results, standing alone, were insufficient to prove that Mr. Walker was incapable of safely driving due to the influence of PCP and cannabis. See *Ciborowski*, 2016 IL App (1st) 143352, ¶ 113 ("[i]t is not enough for the State to show drug use by the defendant").

¶ 25    Ms. Milenkov's testimony established only that Mr. Walker's urinalysis indicated a

positive result for PCP and cannabis. As such, her testimony was no more informative than the urinalysis results themselves. Ms. Milenkov did not know what amounts of PCP and cannabis were detected or when they would have been consumed. Her testimony did not shed light on the question of whether Mr. Walker, at the time he was driving, was under the influence of drugs to a degree that rendered him unable to do so safely.

¶ 26 Neither Trooper Kazupski nor Trooper Tor testified as to having any significant experience or expertise in detecting whether a person was driving under the influence of drugs and whether that person was influenced by a drug to such a degree that it prevented him from driving safely. See *Workman*, 312 Ill. App. 3d at 311 ("when there is no competent evidence by a qualified witness regarding the nature and effect of the drug alleged to have been ingested and the defendant has not admitted to taking the drug and being under the influence, this lack of competent testimony may create a reasonable doubt of the defendant's guilt").

¶ 27 Nothing in the record indicates that either trooper was knowledgeable about the physiological effects of PCP or cannabis, what amount of consumption would produce any significant effect, or how use of the substances would affect a person's ability to drive safely. Put simply, they did not display a level of expertise that would be necessary to sustain the charge against Mr. Walker. See *id.* at 311-12; see also *People v. Trotter*, 2021 IL App (3d) 180726-U, ¶ 40 (finding that the appellate court could not rely on a witness's occupation as a trooper to infer that she also possessed training and qualifications necessary to render an opinion regarding the effects of a drug on the ability to drive); Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023) (nonprecedential orders entered under Rule 23(b) may be cited for persuasive purposes).

¶ 28 In sum, the evidence presented by the State lacked a qualified opinion regarding the nature

and effect of PCP and cannabis. Where Mr. Walker did not admit to taking PCP or cannabis or to being under their influence, this lack of competent testimony created a reasonable doubt as to his guilt. See *Workman*, 312 Ill. App. 3d at 311. Accordingly, we reverse Mr. Walker's conviction for aggravated DUI. This holding moots any claims regarding the admissibility of the medical reports from the La Grange Hospital or the driving abstract.

¶ 29 The State in its response brief argues vigorously that the driving abstract was admissible and that we should affirm Mr. Walker's conviction for driving without a driver's license. However, Mr. Walker was never charged with or convicted of that offense. The State does not argue that driving while one's license revoked is a lesser-included offense of aggravated DUI, and our supreme court has expressly held that it is not. *People v. Nunez*, 236 Ill. 2d 488, 496, 499 (2010). In this case, the lack of a driver's license was simply the aggravating circumstance charged in the DUI conviction, which the parties agree must be reversed. There is no basis on which we could, as the State suggests, "affirm [Mr. Walker]'s conviction" for driving without a license in this case.

¶ 30                                    IV. CONCLUSION

¶ 31 For the foregoing reasons, we reverse the judgment of the trial court.

¶ 32 Reversed.