**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230117-U

Order filed August 27, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0117 Circuit No. 20-DT-101 |
| ZBIGNIEW KRZECZKOWSKI, | ) ) ) | Honorable Thomas W. Cunnington, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Holdridge and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1  *Held*: (1) The evidence was insufficient to sustain defendant's conviction for driving under the influence of drugs, (2) the evidence was sufficient to sustain defendant's conviction for following too closely, and (3) defendant was not denied the effective assistance of counsel.

¶ 2  Defendant, Zbigniew Krzeczkowski, appeals from his convictions for driving while under the influence of drugs (DUI) and following too closely. He argues the evidence was insufficient to sustain his convictions and his trial counsel provided ineffective assistance. We affirm in part and reverse in part.

¶ 3                                    I. BACKGROUND

¶ 4        On May 18, 2020, the Illinois State Police issued defendant traffic citations for DUI in that any drug or combination of drugs rendered him incapable of safely driving (625 ILCS 5/11-501(a)(4) (West 2020)), operating an uninsured motor vehicle (*id.* § 3-707), and following too closely (*id.* § 11-710(a)). The citations arose from a vehicle collision occurring earlier that day.

¶ 5        On October 17, 2022, the matters proceeded to a jury trial. Doris Connelly testified that on May 18, 2020, she was driving south on Interstate 57 at 2:30 p.m. with her three children and nephew. She was driving 70 miles per hour, the speed limit, and the weather was clear. Connelly's vehicle was struck from behind on the left side, which caused it to spin and land in a ditch where it then flipped over multiple times. She did not see the vehicle that struck her before or during the collision but stated it was "going really fast."

¶ 6        Illinois State Trooper Justin Kokos testified he responded to the scene of the collision. He observed Connelly's vehicle on the right shoulder and defendant's vehicle in the center median. Defendant's vehicle had heavy front-end damage. Kokos spoke with defendant, who seemed lethargic. Defendant said nothing about having consumed alcohol or drugs before the accident. After defendant declined medical treatment, Kokos administered standardized field sobriety tests, first testing defendant's eyes for horizontal gaze nystagmus (HGN) and vertical gaze nystagmus (VGN). He observed no HGN, but detected VGN, which he explained, "sometimes indicates impairment with a different substance, commonly is drugs of some sort."

¶ 7        Kokos also administered the walk-and-turn test and testified defendant exhibited several indicators of impairment, such as stepping off the line, missing heel to toe, taking the incorrect number of steps, and failing to turn as instructed. Kokos could not recall whether he used a printed line on the roadway for the test, how many times defendant stepped off the line, how far defendant

2

stepped off the line, how many times defendant missed heel-to-toe steps, whether defendant was able to walk in a straight line, how many steps defendant took, or how defendant specifically failed to comply with the instructed turn. Last, Kokos administered the one-leg stand test during which he believed defendant set his foot down multiple times, swayed his body, and failed to keep his arms at his side. He could not recall many of the specific details of defendant's deficient performance, and the State produced Kokos's written report to refresh his recollection. Kokos reviewed the report and noted it was merely a summary of the events and there were things he observed that he did not put into his report. Kokos thought his video camera was recording but was unsure if any of the tests were captured on video. No video was admitted into evidence.

¶ 8        Kokos arrested defendant at the scene for DUI and transported him to the police station. Defendant agreed to a blood and urine test, and Kokos transported him to a nearby hospital. Defendant fell asleep in the squad car while en route. At the hospital, defendant was lethargic and calm. Defendant fell asleep again while being transported from the hospital to the jail. According to Kokos, Defendant was then questioned by a drug recognition expert who Kokos explained received extensive training and was able to determine whether an individual was under the influence of drugs. The drug recognition expert who questioned defendant was not called to testify.

¶ 9        Casey Craven, a forensic toxicologist with the Illinois State Police, testified she analyzed defendant's blood and urine samples. No alcohol was detected in defendant's blood sample. However, defendant's urine sample contained morphine, fentanyl, norfentanyl, diphenhydramine, and flualprazolam. Craven explained morphine and fentanyl were opioids that could be used in pain management. She stated norfentanyl forms in the body's breakdown of fentanyl, and diphenhydramine was an antihistamine found in Benadryl. Last, she testified flualprazolam was a novel psychoactive substance similar to Xanax but was more potent and longer lasting. Craven

3

explained flualprazolam was not typically used pharmaceutically in the United States and was often obtained either on the black market or off the street.

¶ 10    During closing arguments, the State argued:

"Some of these drugs were legal, some of them may have been prescription, some of them were on the street, you know, what you can get on the street.

The point of the matter is, is that they are drugs. We didn't have to prove that they were by prescription or obtained legally or *** illegally.

* * *

*** Everything that [Craven] told you about what was going on in the defendant's system at the time tells you what you need to know about this accident."

Defense counsel argued the State failed to prove defendant was under the influence of the drugs detected in his system. Defense counsel stated, "they talk about following too closely, and that could be the case, but accidents do happen. Just because you're in an automobile accident doesn't mean you're under the influence of something."

¶ 11    The jury found defendant guilty of all three charges. Thereafter, defendant filed a motion seeking a new trial, arguing, *inter alia*, the circuit court erred when it disallowed evidence demonstrating defendant's vehicle was insured at the time of the collision. The court denied defendant's motion but dismissed the charge for operating an uninsured motor vehicle. The matter proceeded to sentencing where the court sentenced defendant to 24 months' court supervision and ordered him to pay $2679.50 in fines and fees for the DUI conviction. The court imposed a fine of $100 for following too closely. This appeal followed.[1]

---

[1]Though each of defendant's traffic citations were docketed as separate case numbers in the circuit court, the cases were tried jointly and defendant only filed one notice of appeal. The record establishes the circuit court treated the cases as functionally consolidated. Therefore, defendant's amended notice of appeal

4

II. ANALYSIS

¶ 13        On appeal, defendant argues: (1) the evidence presented at trial was insufficient to sustain

his convictions for DUI and following too closely and (2) he received ineffective assistance of

counsel. We address each argument in turn.

¶ 14                           A. Sufficiency of the Evidence

¶ 15        When reviewing a challenge to the sufficiency of the evidence, we view the evidence in

the light most favorable to the prosecution and determine whether any rational trier of fact could

have found each essential element of the crime beyond a reasonable doubt. *People v. Carter*, 2021

IL 125954, ¶ 42. The trier of fact, in this case the jury, determines the credibility of the witnesses,

assigns weight to the testimony, resolves conflicts in the evidence, and draws reasonable inferences

from that evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). A criminal conviction will

not be reversed unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates

a reasonable doubt of the defendant's guilt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009).

"This standard applies whether the evidence is direct or circumstantial, and 'circumstantial

evidence that meets this standard is sufficient to sustain a criminal conviction.' " *People v.*

*Aljohani*, 2022 IL 127037, ¶ 66 (quoting *People v. Jackson*, 2020 IL 124112, ¶ 64).

¶ 16                                    1. *DUI*

¶ 17        To prove a defendant guilty of DUI under section 11-501(a)(4) of the Illinois Vehicle Code

(Code) (625 ILCS 5/11-501(a)(4) (West 2020)), the State must demonstrate the defendant was

driving (1) under the influence of any drug or combination of drugs (2) to a degree that rendered

him incapable of safely driving. *People v. Workman*, 312 Ill. App. 3d 305, 310 (2000).

---

filed in the DUI case providing he appeals his convictions for DUI and following too closely vested this
court with jurisdiction over both matters. See *People v. Marker*, 233 Ill. 2d 158, 162-63 (2009).

¶ 18    Defendant concedes he drove or was in actual physical control of a motor vehicle at the time of the collision. However, he argues the evidence was insufficient to show he was under the influence of a drug or combination of drugs to a degree that rendered him incapable of safely driving. Defendant relies on the Second District's decision in *Workman* to support his position.

¶ 19    In *Workman*, an officer observed the defendant's vehicle stopped on a median and defendant walking toward his rear bumper. *Id.* at 307. The officer approached, and the defendant explained he thought he had been in an accident. *Id.* The officer detected an odor of an alcoholic beverage and observed the defendant swaying, stumbling, and slurring his words. *Id.* The defendant admitted to consuming one beer and agreed to field sobriety tests, which he failed in many respects, and the officer arrested him for DUI. *Id.* At the police station, the defendant's breath test revealed a blood alcohol concentration of 0.01, and a bottle of lorazepam pills was found on his person. *Id.* The prescription on the bottle was dated that day and provided for 30 pills, though only 8 were in the bottle. *Id.* at 307-08. Although the defendant initially denied taking any of the pills, he later admitted to taking eight pills. *Id.*

¶ 20    At trial, the officer testified he became suspicious the defendant was under the influence of drugs after defendant passed the breath test and he learned of the pills. *Id.* at 308. The officer stated there was nothing unusual about the defendant pulling over to the median if he believed he was in an accident. *Id.* The officer testified he had no training or experience regarding the ingestion of lorazepam and how it would affect a person's ability to drive. *Id.* at 309. The defendant testified he had bad knees, which prevented him from performing the field sobriety tests. *Id.* A forensic chemist testified as to the weight and classification of the drug found on the defendant. *Id.* at 308. The circuit court found the defendant guilty, and he appealed. *Id.* at 306. The Second District reversed, determining the evidence was insufficient to support the defendant's guilt:

"Here, the officer did not testify that he had any significant experience or expertise in detecting whether a person was driving under the influence of drugs and whether the person was influenced by a drug to such a degree that it prevented his driving safely. The officer was not knowledgeable about lorazepam, its nature, or its effects on a driver. He did not display the level of expertise necessary to sustain the charge. The only test the officer claimed to have available to him to detect whether someone was under the influence of a drug was the HGN test, a test he did not administer. The officer only became suspicious that defendant might be under the influence of something other than alcohol after he discovered the medicine bottle and after defendant had 'passed' the breath test.

Although the State presented the testimony of a forensic chemist, she only testified regarding the weight and classification of the drug that was presumably ingested by defendant. There is no competent testimony whatsoever regarding the drug's physiological effects, the amount required to produce any significant effect, or how the drug would affect a person's ability to drive safely. There was conflicting evidence regarding whether defendant had actually taken any amount of the drug. It is unclear when he would have taken the drug that day. Defendant denied taking the drug and never admitted to being under the influence of any chemical substance. Although there were medical tests that could have been performed to determine whether defendant had in fact ingested a drug or was under the influence of a drug, none were produced at trial." *Id.* at 311-12.

¶ 21    Defendant argues that the instant facts warrant the outcome in *Workman*. Though there were certainly indicators of impairment in this case, there was no competent evidence connecting

7

them to any of the drugs found in defendant's system. See *id.* at 310 (explaining there is no generic DUI offense and the drug in question must be shown to have some intoxicating effect). Kokos did not testify that he had any experience in detecting whether an individual was under the influence of a drug to such a degree that rendered driving unsafe, nor did he provide any testimony regarding the how the drugs specifically found in defendant's system would have led to defendant's impairment. While defendant was questioned by a drug recognition expert on the day of the collision, the State did not offer that testimony. Similarly, Craven's toxicology testimony did not address the physiological effects of the drugs found in defendant's system or how they might affect his ability to drive safely. Without competent evidence explaining the nature and effect of the drugs in defendant's system, the fact finder was left to speculate about the effect these substances had on his ability to drive safely—an essential element of the crime for which defendant was convicted.

¶ 22        In response, the State counters there is sufficient incriminating evidence to sustain defendant's DUI conviction and cites *People v. Gocmen*, 2018 IL 122388, ¶ 62, for the proposition that expert testimony is not required in every case to establish a motorist was under the influence of drugs and an inference can be drawn from the totality of the circumstances. The State also highlights language in *Workman* noting "this lack of competent testimony may create a reasonable doubt of the defendant's guilt, *absent other sufficiently incriminating evidence*." (Emphasis added.) *Workman*, 312 Ill. App. 3d at 311. The State points to the following evidence, which it contends is sufficiently incriminating to sustain defendant's DUI conviction: the nature of the collision, the urine test revealing five different substances in defendant's system, defendant's lethargy, and his performance on the failed field sobriety tests.

¶ 23     We agree with the State that the nature of the accident, defendant's performance on the field sobriety tests, and his lethargy suggested that defendant was impaired. Unlike in *Gocmen,* however, the procedural posture here is not a civil statutory summary suspension hearing where we review whether reasonable grounds for arrest exist under the totality of the circumstances. *Gocmen*, 2018 IL 122388, ¶ 23. Rather, the issue here is whether the State proved beyond a reasonable doubt that the influence of any drug or combination of drugs rendered defendant incapable of safely driving. The State is correct that expert testimony is not required in every case to establish a motorist was under the influence of drugs. See *Gocmen*, 2018 IL 122388, ¶ 62 (lack of expert testimony degrading drugs not fatal to reasonable grounds assessment in statutory summary suspension proceeding). However, as *Workman* noted, there must be sufficient other evidence to support a finding of guilt. *Workman*, 312 Ill. App. 3d at 311.

¶ 24     Stated otherwise, there must be some evidence of the nature and effect of the drugs found in defendant's system and how they relate to defendant's ability to drive safely. Here, no evidence was presented that defendant made statements regarding the timing of his ingestion of drugs or how they affected him. Nor were drugs were found on defendant's person or in his vehicle. Ultimately, there was no evidence regarding, *inter alia*, the timing of the ingestion of the substances found in defendant's system, the effects the substances in question would have on a motorist's driving abilities, whether these substances were stimulants or depressants, how long these substances remain in the system after ingestion, or whether evidence of these drugs in the system can persist after possible impairment dissipates. While Kokos testified that a drug recognition expert in fact interviewed defendant, no testimony was offered regarding any observations or opinions by that expert.

¶ 25    Accordingly, the DUI conviction here rests on speculation and is so unsatisfactory that we reverse defendant's DUI conviction outright. See *Siguenza-Brito*, 235 Ill. 2d at 225 (explaining a criminal conviction will be reversed where the evidence is so unsatisfactory that it creates a reasonable doubt of the defendant's guilt.).

¶ 26                                  2. *Following Too Closely*

¶ 27    Defendant next contends the State presented insufficient evidence to sustain his conviction for following too closely. Section 11-710(a) of the Code provides "[t]he driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway." 625 ILCS 5/11-710(a) (West 2020). Defendant argues the jury presumed he was guilty merely because he drove the rear vehicle in a rear-end collision, as that was the only evidence presented. The State argues the evidence was sufficient as it established defendant was speeding, and had he maintained a safe distance, the accident would not have occurred.

¶ 28    Connelly's uncontroverted testimony established she was traveling at the speed limit when her vehicle was struck on the left rear side by defendant's vehicle. The weather was clear, and it was daylight. The jury was not required to disregard inferences which flow normally from the evidence presented or seek out all possible explanations consistent with innocence to raise them to a level of reasonable doubt. See *People v. Campbell*, 146 Ill. 2d 363, 380 (1992). Drawing all reasonable inferences in favor of the State, we conclude a rational trier of fact could find defendant guilty beyond a reasonable doubt of following too closely.

¶ 29                              B. Ineffective Assistance of Counsel

¶ 30    We next address defendant's claims of ineffective assistance of counsel. Initially we note defendant raises several arguments with respect to counsel's representation as to his DUI

10

conviction, which we do not reach because we have reversed that conviction (*supra* ¶ 25). Thus, we only consider the allegations of ineffective assistance that defendant specifically argued applied to his conviction for following too closely.

¶ 31     The United States and Illinois Constitutions guarantee criminal defendants the right to the effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8. We analyze such claims under the two-prong standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), providing "a criminal defendant must show both that (1) counsel's performance was deficient and (2) the deficient performance prejudiced defendant such that he was deprived of a fair trial." *People v. Brown*, 2023 IL 126852, ¶ 11. A narrow exception applies pursuant to *United States v. Cronic*, 466 U.S. 648, 656 (1984), where actual prejudice is presumed if defense counsel entirely fails to subject the State's case to meaningful adversarial testing. *People v. Hattery*, 109 Ill. 2d 449, 461 (1985). Our review is *de novo*. *People v. Lofton*, 2015 IL App (2d) 130135, ¶ 24.

¶ 32                                    1. *Concession of Guilt*

¶ 33     Defendant argues counsel was ineffective when he conceded defendant's guilt of following too closely during his closing argument. Specifically, counsel stated, "they talk about following too closely, and that could be the case, but accidents do happen. Just because you're in an automobile accident doesn't mean you're under the influence of something." Defendant argues counsel's concession meets the narrow exception in *Cronic* excusing the need to demonstrate prejudice because counsel's theory of defense was no defense at all, *i.e.*, he effectively pleaded guilty to following too closely on defendant's behalf.

¶ 34     We disagree with defendant's characterization. Counsel did not affirmatively argue defendant committed the offense of following too closely; rather, he acknowledged that it was possible, but asked the jury to consider "accidents do happen." From this it cannot be concluded

11

that counsel made a definitive concession of defendant's guilt or invited the jury to find him guilty. *People v. Page*, 155 Ill. 2d 232, 264-65 (1993) (holding counsel did not expressly invite the jury to find the defendant guilty but instead simply presented an incomplete argument for innocence). Counsel's statement is a far cry from the concession defendant refers us to in *Hattery*, where defense counsel stated in opening that defendant committed the charged murder and was death eligible, though defendant had not entered a plea of guilty. *Hattery*, 109 Ill. 2d at 464. Unlike in *Hattery*, counsel here did not make a direct, unequivocal concession of defendant's guilt or invite the jury to find him guilty. See *People v. Emerson*, 122 Ill. 2d 411, 430 (1987) (noting *Hattery* constituted a direct, unequivocal concession of the defendant's guilt).

¶ 35        Indeed, the record clearly demonstrates counsel put forth a rigorous defense, thoroughly challenged the State's case, and did not deprive defendant of the right of having the issue of his guilt or innocence of following too closely presented to the jury as an adversarial issue. For these reasons, we also cannot say counsel's performance fell below an objective standard of reasonableness. See *People v. Manning*, 241 Ill. 2d 319, 327 (2011) (providing, under *Strickland*, counsel's performance is measured by an objective standard of competence pursuant to prevailing professional norms). Accordingly, this argument fails under both *Cronic* and *Strickland*.

¶ 36                                    2. *Kokos's Testimony*

¶ 37        Defendant also argues counsel was ineffective when he failed to object to Kokos's testimony providing there was additional evidence of defendant's guilt that he could not remember even after having his memory refreshed with his written report. As it relates to defendant's following too closely conviction, defendant made this argument for the first time in his reply brief. Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) pertains to the form and substance of an appellant's brief and provides "[p]oints not argued are forfeited and shall not be raised in the reply

12

brief, in oral argument, or on petition for rehearing." Defendant forfeited this argument by failing to timely raise it.

¶ 38                                    3. *The State's Closing Argument*

¶ 39        Defendant also argues counsel was ineffective for failing to object to the State's closing argument that some of the drugs were legal, prescription, or found on the street. Specifically, defendant contends that these statements allowed the jury to find him guilty of following too closely based on the suggestion that he dealt drugs. The State's argument in this regard, however, was based on the testimony of Craven, who testified flualprazolam was not typically used pharmaceutically in the United States and often obtained either on the black market or off the street. The State never suggest defendant dealt drugs; rather, highlighting this testimony spoke to how defendant might have obtained the drugs found in his system. The State also correctly explained to the jury it needed to prove there were drugs in defendant's system regardless of how they were obtained. For these reasons, we reject defendant's reliance on *People v. Porter*, 372 Ill. App. 3d 973, 979 (2007), a case where the State impermissibly made repeated remarks the defendant was dealing drugs and where the case did not involve drugs.

¶ 40        Defendant also takes issue with the State's closing argument when it stated, "Everything that [Craven] told you about what was going on in the defendant's system at the time tells you what you need to know about this accident." He argues this comment suggested Craven gave sufficient testimony about the intoxicating effects of the drugs detected in his urine and amounted to an assumption not based on the evidence. We disagree. This statement is best characterized as the State's position and legal conclusion of the case, which was permissible. See *People v. Kliner*, 185 Ill. 2d 81, 151 (1998) ("It is well established that the prosecutor is afforded wide latitude in closing argument and may argue to the jury facts and reasonable inferences drawn from the

13

evidence."). For these reasons, we cannot say counsel's performance was deficient or fell below an objective standard of reasonableness when he failed to object to the State's closing argument.

¶ 41                                     4. *Other Arguments*

¶ 42        Defendant argues in his opening brief that counsel was ineffective for allowing the jury to hear a calculated story developed by the State to play to the jury's emotions, resulting in both convictions. However, in his reply brief, he states this argument only pertains to his DUI conviction.[2] Thus, we do not consider this argument as we have already reversed his DUI conviction (*supra* ¶ 25).

¶ 43        Finally, defendant argues the cumulative effect of his counsel's errors warrants reversal of his conviction for following too closely. Having found no errors, there is no cumulative error.

¶ 44                                     III. CONCLUSION

¶ 45        The judgment of the circuit court of Kankakee County is affirmed in part and reversed in part.

¶ 46        Affirmed in part and reversed in part.

---

[2]Defendant's reply brief indicates that he only argues two claims of ineffective assistance as it relates to his conviction for following too closely, neither of which was this argument.

14