**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240267-U

Order filed April 3, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0267 Circuit No. 22-DT-1054 |
| MELISSA A. BECKMAN, | ) ) ) | Honorable Bennett J. Braun, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices Holdridge and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1       *Held*:  The evidence was sufficient to sustain defendant's conviction for driving under the influence of alcohol.

¶ 2       Defendant, Melissa A. Beckman, appeals from her conviction for driving while under the influence of alcohol (DUI). Defendant argues the evidence was insufficient to sustain her conviction as the evidence tended to demonstrate her behavior was the result of a traumatic head injury rather than alcohol consumption. We affirm.

¶ 3                                      I. BACKGROUND

¶ 4         On December 17, 2022, the Bolingbrook Police Department issued defendant a traffic citation for DUI (625 ILCS 5/11-501(a)(2) (West 2022)) in that she was driving or in actual physical control of a vehicle while under the influence of alcohol. On October 25, 2023, the matter proceeded to a bench trial where the following evidence was presented.

¶ 5         Officer Rachel Bens testified that on December 17, 2022, at approximately 8 p.m., she responded to the scene of a two-vehicle collision. Her squad car video was admitted into evidence. Bens approached the vehicles and observed that one vehicle had rear-end damage and the vehicle driven by defendant had front end damage. Bens spoke with defendant who had her head down with her eyes closed while she leaned against her vehicle. Bens did not see that defendant was injured but offered medical treatment, which defendant declined. Bens observed defendant had slurred speech, red and glassy eyes, and an odor of an alcoholic beverage emanating from her breath. Defendant stated she was not "drunk" and did not intend to hurt anyone. Defendant provided she consumed alcohol approximately 10 hours before the collision. While the vehicles were being towed, defendant sat inside Bens's squad car while Bens completed the accident report. Defendant stated she was on the phone with her husband and asked Bens if she was under arrest. Bens replied that defendant was not yet under arrest. Defendant asked where her husband could meet them because she "hit [her] head a long time ago" and "can't remember things very well."

¶ 6         Bens testified that she brought defendant to a parking lot for standardized field sobriety tests. When Bens explained the tests, defendant often interrupted and stated several times that she had scars on her back from being stabbed by Drew Peterson. Bens first administered the horizontal gaze nystagmus test and observed six cues indicative of alcohol consumption (equal tracking, nystagmus as far right and left as possible, and nystagmus at 45 degrees in each eye). Defendant

moved her head during the test despite Bens's instruction to not move her head. Bens confirmed that defendant did not use glasses or contacts and could see the pen used to administer the test. Next, Bens demonstrated the walk-and-turn test and discussed the test with defendant at length. Defendant stated her legs were fine. Defendant took more steps than directed and could not remember the directions. Bens concluded defendant failed the test by failing to maintain her position during the instructions, keep her balance, keep her arms at her side, and stay on the line. Last, Bens demonstrated the one-leg stand test, and defendant repeatedly stated it was "a bullshit test." Defendant accused the police of conspiring with Drew Peterson, complained of the wind and cold weather conditions, and declined to perform the test. Bens opined, based on her training and experience, defendant was intoxicated as indicated by her performance of the tests, her speech and eyes, how she was standing, her statement that she was stabbed, and the odor of an alcoholic beverage emanating from her breath. Bens placed defendant under arrest for DUI.

¶ 7        Dr. James Kowal testified for the defense that he was a clinical psychologist, and he was tendered without objection as an expert in neurotherapy. Kowal testified he began treating defendant in January 2023, approximately one month after the collision. Defendant complained of a traumatic head injury that affected her mood and anxiety. She presented with generalized anxiety with panic, posttraumatic stress, and migraine headaches. Kowal conducted an electroencephalogram and confirmed defendant's brain was functioning consistent with her reported symptoms. Kowal stated defendant reported that she had these symptoms before the date of the collision and her condition affected her memory, balance, and speech. Kowal reviewed the video evidence and opined defendant's demeanor was consistent with her diagnosis. When he first met defendant, she was careful walking, often easily confused, and had difficulty explaining things and maintaining focus.

¶ 8    Paul Carver testified he had known defendant for approximately 25 years. Over the past couple of years, he noticed that her speech pattern frequently varied and she was not very cognizant. On the day of the collision, Carver was with defendant from 12 p.m. to 7:30 or 8 p.m. and she did not consume alcohol during that time. Carver observed defendant after her arrest and noticed she had a bump on her head that was not present earlier in the evening. On cross-examination, Carver stated he did not notice anything as to defendant's eyes, speech, or breath before the collision. He described the bump on defendant's head as red and half an inch in size a day or two later. Carver was unaware that defendant told the police that she had consumed alcohol earlier that day. On redirect examination, Carver was shown a photograph of defendant's face, which he stated depicted what she looked like after the collision. He identified a "big red bump or a big red spot" on her head. On recross examination, Carver clarified it was a red spot.

¶ 9    The circuit court found defendant guilty of DUI in that her consumption of alcohol rendered her unsafe to operate a motor vehicle with reasonable care. The court gave some weight to Kowal's testimony but noted it did not explain defendant's admission of alcohol consumption and her bloodshot and glassy eyes. Defendant filed a motion to reconsider the finding of guilt, which the court denied. The court stated it found Carver's testimony not credible and Bens's testimony carried more weight than Kowal's testimony. The court sentenced defendant to 24 months' conditional discharge and 5 days in jail. Defendant appeals.

¶ 10                                    II. ANALYSIS

¶ 11    On appeal, defendant argues the evidence presented at trial was insufficient to sustain her DUI conviction as the evidence tended to demonstrate her behavior following the vehicle collision was the result of a traumatic head injury rather than alcohol consumption.

¶ 12        When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt. *People v. Carter*, 2021 IL 125954, ¶ 42. The trier of fact determines the credibility of the witnesses, assigns weight to the testimony, resolves conflicts in the evidence, and draws reasonable inferences from the evidence. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). "The trier of fact need not, however, be satisfied beyond a reasonable doubt as to each link in the chain of circumstances. It is sufficient if all of the evidence taken together satisfies the trier of fact beyond a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.) *Id.* at 281. A conviction will not be reversed unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009).

¶ 13        To prove a defendant guilty of DUI under section 11-501(a)(2) of the Illinois Vehicle Code (Code), the State must demonstrate (1) the defendant drove or was in actual physical control of a vehicle (2) while under the influence of alcohol. 625 ILCS 5/11-501(a)(2) (West 2022). Here, defendant only disputes that the State proved that she was under the influence of alcohol. "[U]nder the influence of alcohol means under the influence to a degree that renders the driver incapable of driving safely." (Internal quotation marks omitted.) *People v. Love*, 2013 IL App (3d) 120113, ¶ 34. In other words, " '[a] person is under the influence of alcohol when, as a result of drinking any amount of alcohol, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care.' " *People v. Gordon*, 378 Ill. App. 3d 626, 631 (2007) (quoting Illinois Pattern Jury Instructions, Criminal, No. 23.29 (4th ed. 2000)).

¶ 14        We conclude the evidence was sufficient to sustain defendant's DUI conviction. The evidence demonstrated defendant was in a collision when her vehicle struck another vehicle from

5

behind. Defendant declined medical treatment and did not mention any injury or prior head trauma. Bens testified defendant's eyes were glassy and bloodshot, defendant slurred her speech, and an odor of an alcoholic beverage emanated from defendant's breath. Defendant, without being prompted, told Bens she was not "drunk" and did not mean to hurt anyone. Defendant admitted to consuming alcohol 10 hours prior to the collision. Once defendant was in Bens's squad car, defendant asked if she was under arrest and Bens told her not yet. Defendant then informed Bens that she "hit [her] head a long time ago" and "can't remember things very well." When Bens explained the standardized field sobriety tests, defendant constantly interrupted her and stated she had scars on her back from when Drew Peterson stabbed her. Defendant slurred her speech, could not recall instructions or keep her balance, and stumbled. Nonetheless, defendant confirmed she could walk without issue and did not inform Bens that her prior head trauma affected her in any way other than her memory. Defendant declined to perform the one-leg stand test and became belligerent. Bens testified, based on her training and experience, defendant was intoxicated.

¶ 15        Defendant presented two competing theories to explain these indicators that she was under the influence of alcohol. First, Carver testified there was nothing wrong with defendant just before the collision and she did not consume alcohol, perhaps suggesting her behavior only occurred *after*, and as a result of, the collision. There was no evidence defendant was injured from this collision. Bens did not observe any injury, defendant did not inform Bens of any injury, and defendant declined medical treatment. While Carver stated he observed a large bump on defendant's head following the collision, when presented with a photograph of the purported injury, he concluded it was just a red spot. Second, Kowal testified that defendant's symptoms were present *before* the collision from a prior head trauma. Defendant did not present to Kowal until a month after the collision and reported she experienced symptoms that affected her memory, balance, and speech.

However, Kowal's testimony did not explain how defendant's diagnosis would cause other cues of impairment: glassy and bloodshot eyes, the odor of an alcoholic beverage on her breath, or defendant being belligerent and making unusual statements. Accordingly, it was not unreasonable for the court to attribute defendant's performance on the field tests, slurred speech, and lack of balance to alcohol consumption rather than her prior head trauma. Moreover, in weighing this evidence, the court was "not required to disregard inferences which flow normally from the evidence before it, nor need it search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *Jackson*, 232 Ill. 2d at 281. Thus, viewing the evidence in the light most favorable to the State, the evidence was sufficient to prove defendant guilty beyond a reasonable doubt of DUI under section 11-501(a)(2) of the Code.

¶ 16      In reaching this conclusion, we reject defendant's reliance on *People v. Monday*, 2023 IL App (3d) 220025-U. In *Monday*, we reversed the defendant's conviction for DUI (drugs) where there was no scientific evidence of intoxication or expert testimony regarding drug detection despite the odor of cannabis and the defendant's slowed and slurred speech, bizarre behavior, and signs of impairment on the standardized field sobriety tests. *Id.* ¶¶ 5-6, 14. However, cases involving alcohol intoxication, such as the case at bar, do not require the same level of scientific evidence. "It is well established that even a layperson is competent to testify regarding a person's intoxication from alcohol, because such observations are within the competence of all adults of normal experience." *People v. Workman*, 312 Ill. App. 3d 305, 310 (2000). Here, Bens competently testified to link defendant's alcohol consumption to the cues of impairment.

¶ 17                                          III. CONCLUSION

¶ 18      The judgment of the circuit court of Will County is affirmed.

¶ 19      Affirmed.